# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-01252-SCT

*BELLSOUTH PERSONAL COMMUNICATION, LLC, THE SUCCESSOR TO MCTA, A MISSISSIPPI GENERAL PARTNERSHIP*

*v.*

*BOARD OF SUPERVISORS OF HINDS COUNTY, MISSISSIPPI AND TAX ASSESSOR, MIKE BARNES*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/20/2004 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | STACY E. THOMAS |
| | WALKER W. (BILL) JONES, III |
| | ROBERT F. WALKER |
| ATTORNEY FOR APPELLEES: | GLOVER A. RUSSELL, JR. |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | VACATED AND REMANDED - 06/23/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH
## NO. 2004-CA-01256-SCT

*MCTA, A MISSISSIPPI GENERAL PARTNERSHIP AND NORTHEAST MISSISSIPPI CELLULAR, LLC, A GEORGIA LIMITED LIABILITY COMPANY*

*v.*

*BOARD OF SUPERVISORS OF HINDS COUNTY, MISSISSIPPI AND TAX ASSESSOR, MIKE BARNES*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/20/2004 |
| TRIAL JUDGE: | WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |

ATTORNEYS FOR APPELLANTS:  STACY E. THOMAS
                          WALKER W. (BILL) JONES, III
                          ROBERT F. WALKER
ATTORNEY FOR APPELLEE:    GLOVER A. RUSSELL, JR.
NATURE OF THE CASE:       CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:              VACATED AND REMANDED - 06/23/2005
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE COBB, P.J., CARLSON AND GRAVES, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     BellSouth Personal Communications, LLC has appealed the Hinds County Circuit

Court's final judgments dismissing both of BellSouth's separately filed tax appeals without

prejudice and awarded attorney's fees in excess of $100,000 as a condition to the voluntary

dismissal.  Finding that the circuit court abused its discretion by not making findings of fact

and conclusions of law to support its award of attorney's fees assessed against BellSouth,

we vacate its judgments and remand this case to the Circuit Court of the First Judicial

District of Hinds County for further proceedings consistent with this opinion.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2.     BellSouth Personal Corporation ("BellSouth")[1] filed two separate tax appeals in the

Circuit Court of the First Judicial District of Hinds County, and these two appeals will be

referred to as the 2000 tax appeal and the 2002 tax appeal.  In both appeals, the defendants

---

[1]BellSouth is the successor in interest to two entities that initially filed these appeals, MCTA, a Mississippi general partnership, and Northeast Mississippi Cellular, LLC ("NEMC"), a Georgia limited liability company.  MCTA was the sole plaintiff in the 2000 appeal and both the MCTA and NEMC were plaintiffs in the 2002 appeal.

2

and now appellees are the Board of Supervisors of Hinds County, and Hinds County Tax Assessors Mike Barnes (collectively "Hinds County").

¶3.    BellSouth's 2000 tax appeal involved an equipment changeover agreement made between BellSouth and Ericcson, Inc. ("Ericcson"). By the terms of this agreement, BellSouth agreed to trade in its outdated cellular telephone equipment ("Hughes equipment")[2] along with $50 million for brand new and vastly superior cellular equipment manufactured by Ericsson ("Ericcson equipment"). The changeover agreement called for Ericcson to modernize the BellSouth cellular network by installing its latest equipment in agreed market areas. Upon testing and approval, BellSouth agreed to take title to the Ericcson equipment while Ericcson agreed to take title to the used Hughes equipment and apply its true value toward payment of the overall contract price.

¶4.    This massive changeover project entailed wholesale equipment change outs in fourteen separate service areas which included the Hinds County market. Specifically, the Hinds County market area was scheduled for changeover in the year 2000. The 2000 tax appeal at issue in this case is based on the disputed valuation assigned to the Hughes equipment which was scheduled for changeover and located within the Hinds County market area. BellSouth contested the Hinds County tax assessor's alleged overvaluation of the tax value assigned to the Hughes equipment.

---

[2]The equipment was manufactured by Hughes Network Systems, had a total contract value of $47 million and was located in six different states: Mississippi, Florida, Louisiana, Alabama, Tennessee, and Kentucky.

3

¶5.    Since the critical dates for objecting to the 2000 tax assessment and appealing Hinds County's decision regarding such objection preceded the actual change-out, the exact amount of tax relief requested had to be estimated. In December, 1999, Hinds County appraised the true value of the Hughes equipment located in the Hinds County area at $20,430,060.00. By way of a response and on August 30, 2000, BellSouth filed a Notice of Appeal and Bond challenging the Hinds County estimate and claiming that Hinds County had unjustly levied $404,005.00 in ad valorem taxes against its equipment by misstating the true value of the Hughes equipment. While BellSouth amended its Notice of Appeal and Bond on October 25, 2003, fundamental to both filings was the allegation that the Hughes equipment located in Hinds County should only be appraised at a significantly lower amount than the Hinds County appraisal of true value.

¶6.    Specifically, BellSouth claimed that the lower amount was representative of the true market value of its personal property located in the Hinds County area. Mississippi Law requires that property be taxed on its "true value." According to statute, true value may be determined by using a property's market value. *See* Miss. Code Ann. § 27-35-50(1).[3] Thus, BellSouth premised its assessment on the contract price established with Ericcson and used this value as the replacement cost of the Hughes equipment. This valuation was eventually deemed unreliable, due to the fact that BellSouth's attempted valuation of the used equipment in place on January 1, 2000, which was based on the future event of the alleged delivery of unidentified and unknown Ericcson equipment to the Hinds County area in

_____

[3]True value shall mean and include, but shall not be limited to, market value, cash value, actual cash value, proper value and value for the proposes of appraisal for ad valorem taxation.

4

December, 2000, ran afoul of Miss. Code Ann. § 27-35-23 (1972, as amended). Moreover, at the time that BellSouth filed its 2000 tax appeal, it could not identify the units of Ericcson equipment that might or might not be installed in the Hinds County area. After several attempts, BellSouth terminated its two and half year pursuit to substantiate its original valuation by way of discovery and settlement negotiations and asked the circuit court to dismiss its appeal. BellSouth reasoned that it was no longer worth pursuing the appeal based on the amount of money it would cost to see its appeal to conclusion.

¶7. BellSouth produced thousands of discovery documents which caused Hinds County to expend many hours reviewing and analyzing these documents. The documents included financial statements, tax returns, agreements relating to BellSouth's equipment changeover, renditions for approximately twenty-five cell sites located in Hinds County, and numerous other related documents. BellSouth actively pursued its case and not only took Hinds County's Miss. R. Civ. P. 30(b)(6) deposition, but also deposed three employees of the Hinds County Tax Assessor's office and two employees of the Mississippi State Tax Commission. Conversely, Hinds County initiated its own discovery, including interrogatories and a request for documents, and examined both quarterly and annual reports filed by BellSouth and Ericcson with the Securities and Exchange Commission.

¶8. On August 29, 2002, and before the aforementioned hearings, BellSouth filed its second of two tax appeals against Hinds County seeking additional ad valorem tax relief in the amount of $137,170.85. The 2002 appeal involved a dispute with Hinds County over the taxation of software. BellSouth claimed that the taxed properties were not only exempt

5

from Mississippi ad valorem taxes under Miss. Code Ann. § 27-31-45, but that the values, which were determined by the tax assessor and approved by Hinds County, were based on erroneous useful lives for the equipment in question. Hinds County ultimately claimed that it spent $4,688.00, which was documented in nine pages of detailed itemized billing statements, in defense of the 2002 litigation.

¶9. On February 7, 2003, BellSouth filed a motion to dismiss pursuant to Miss. R. Civ. P. 41(a)(2) and asked the circuit court to dismiss its appeals with prejudice, with each party to bear its own costs. On March 5, 2003 Hinds County filed its motion for dismissal without prejudice and for reimbursement of expenses including attorney's fees and other costs of litigation. Hinds County alleged that as of February 17, 2003, in defending both actions filed by BellSouth, it had incurred attorney's fees and litigation expenses in the amount of $95,381.82 and, in support of this assertion, provided seventy-four pages of itemized billing statements. The billing statements itemized the services rendered by Hinds County's counsel by way of preparation of responsive pleadings and analysis of documentation. Additionally, Hinds County included the sworn affidavit of its principal attorney in this case.

¶10. On June 20, 2003, the circuit court heard BellSouth's motion for voluntary dismissal with prejudice of its 2000 tax appeal. At the conclusion of this hearing, Hinds County and BellSouth agreed to a voluntary dismissal without prejudice pursuant to Miss. R. Civ. P. 41(a)(2), but failed to come to terms regarding an attorney's fee award. This became the sole remaining issue for the circuit court to determine after the June 20, 2003, hearing.

¶11. On November 25, 2003, the circuit court held another hearing in order to specifically address the outstanding issue of attorney's fees and litigation expenses. Both parties presented arguments concerning the applicability of Miss. R. Civ. P. 41(a)(2), Miss. R. Civ. P. 11, and the Litigation Accountability Act of 1988. *See* Miss. Code Ann. §§ 11-55-1 et seq. (Rev. 2002).

¶12. The Circuit Court of Hinds County issued two identical orders on April 20, 2004, awarding attorney's fees under Miss. R. Civ. P. 41(a)(2) as a condition for allowing BellSouth to voluntarily dismiss both claims without prejudice. These orders were conclusive as the deadline for filing tax appeals had long passed.[4] The circuit court issued a separate ruling in each case and denied Hinds County's motion requesting attorney's fees under Miss. R. Civ. P. 11 and the Litigation Accountability Act. It is from these orders that BellSouth now appeals to us.

## DISCUSSION

¶13. The standard of review appropriate to this case is governed by Miss. R. Civ. P. 41(a)(2). Accordingly, the comment thereto specifically directs that a "[d]ismissal on motion under Rule 41(a)(2) is within the sound discretion of the court, and its order is reviewable only for abuse of discretion. The discretion given the court by [this Rule] is a judicial, rather than an arbitrary, discretion." Miss. R. Civ. P. 41(a)(2) cmt. Moreover, a hearing should be held, if necessary, as it is the court's responsibility to endeavor to ensure

---

[4]*See* Miss. Code Ann. § 11-51-77 (Rev. 2002) states "[a]ny person aggrieved by a decision of the board of supervisors or the municipal authorities of a city, town or village, as to the assessment of taxes, may, within ten days after the adjournment of the meeting at which such decision is made, appeal to the circuit court of the county...."

substantial justice to both parties. *Id.* "[I]mportantly, this Court can reverse only where there has been an abuse of that judicial discretion." ***Carter v. Clegg***, 557 So. 2d 1187, 1190 (Miss. 1990). "(*See generally **Bolls v. Harris***, 528 So. 2d 1128, 1129 (Miss. 1988); ***Shepherd v. Delta Medical Center***, 502 So. 2d 1188, 1190-91 (Miss. 1987); ***Smith v. H.C. Bailey Companies***, 477 So. 2d 224 (Miss. 1985); *see also **McCants v. Ford Motor Co., Inc.***, 781 F.2d 855, 857 (11th Cir. 1986)(citations omitted); ***Moore v. Interstate Fire Insurance Co.***, 717 F. Supp. 1193, 1197 (S.D.Miss. 1989). *Accord **Kern v. TXO Production Corp***., 738 F.2d 968, 971 (8th Cir. 1984) (the very concept of discretion presupposes a zone of choice within which the trial court may go either way [in granting or denying the motion].)." 557 So.2d at 1190. *Compare **Salts v. Gulf Nat. Life Ins. Co.***, 872 So.2d 667 (Miss. 2004); and, ***Bowie v. Montfort Jones Memorial Hosp.***, 861 So.2d 1037 (Miss. 2003) (finding no abuse of discretion by the trial courts in dismissing the cases due to discovery violations).

I. **WHETHER BELLSOUTH CAN APPEAL A DISMISSAL WITHOUT PREJUDICE AS ISSUED BY THE CIRCUIT COURT.**

¶14.    As its threshold argument, Hinds County asserts that the dismissals in this case are not ripe for appellate review since both tax appeals were dismissed by the circuit court without prejudice and since BellSouth technically retains its right to relitigate its suits at a later date. Relying on federal precedent, Hinds County maintains that BellSouth must have been legally prejudiced by and not have acquiesced in the conditions imposed in order to pursue this appeal. To this end, Hinds County argues that BellSouth got exactly what it

asked for by way of voluntary dismissal and was not legally prejudiced by the reasonable assessment of attorney's fees.

¶15. In evaluating Miss. R. Civ. P. 41(a)(2), this Court has considered federal precedent where Mississippi case law has been sparse. In *Carter v. Clegg*, 557 So. 2d 1187 (Miss. 1990), we noted that our rule was substantially modeled after Fed. R. Civ. P. 41 and that since "this Court has decided only a limited number of cases involving MRCP 41, it is appropriate to discuss the federal courts' analyses of the similar federal rule." *Id.* at 1190 (*See Shell Oil Co. v. Murrah*, 493 So. 2d 1274, 1276 (Miss. 1986)). Recognizing the dearth of cases on point concerning this issue, it is appropriate to discuss federal precedent.

¶16. In *Mortgage Guaranty Insurance Corp. v. Richard Carlyon Co.*, 904 F.2d 298, 300 (5ᵗʰ Cir. 1990), the Fifth Circuit faced the same question regarding Rule 41(a)(2) that we face today. In addressing the issue, the Fifth Circuit summarized its Rule 41(a)(2) jurisprudence:

> Generally, an order of voluntary dismissal without prejudice entered at the plaintiff's request is not an involuntary adverse judgment. *Yoffe v. Keller Industries, Inc.*, 580 F.2d 126 (5ᵗʰ Cir. 1978), *cert. denied*, 440 U.S. 915, 99 S.Ct. 1231, 59 L.Ed.2d 464 (1979); *Lecompte v. Mister Chip, Inc.*, 528 F.2d 601, 603 (5ᵗʰ Cir. 1976). If the dismissal has given the plaintiff exactly what it sought– dismissal of its current suit and the right to bring an action on the merits at a later date – the courts will not permit the plaintiff to appeal. *Yoffe*, 580 F.2d at 129. An appeal may sometimes be allowed, however, where the court imposes conditions upon a voluntary dismissal. Rule 41(a)(2) empowers the court to condition voluntary dismissals "upon such terms and conditions as the court deems proper." Most often, the courts require plaintiffs to bear the attorneys' fees and costs of the dismissed defendant. *LeCompte*, 528 F.2d at 603. See 9 Wright & Miller, Federal Practice & Procedure § 2366 (1971). Because onerous conditions may render the plaintiff's dismissal less than voluntary, the Fifth Circuit will permit an appeal if (1) the plaintiff is "legally prejudiced" by the conditions accompanying the grant of dismissal; and (2)

the plaintiff has not agreed to or legally acquiesced in those conditions. *Yoffe*, 580 F.2d at 130. In *LeCompte*, "*legal prejudice" was explained as a condition which "goes to the heart of plaintiff's legal cause of action" and in that case "severely circumscribed his ... freedom to bring a later suit.*" 528 F.2d at 604.

904 F.2d at 300 (emphasis added).

¶17.   In *LeCompte v. Mister Chip, Inc.*, 528 F.2d 601, 603 (5th Cir. 1976), the Fifth Circuit examined the concept of "legal prejudice."   Moreover, according to the Fifth Circuit, its research evidenced a difference between prejudice in a practical sense– "paying costs or expenses, producing documents, producing witnesses"– and prejudice in a legal sense– "which would entitle a plaintiff to appeal the grant of dismissal he obtains." *LeCompte*, 528 F.2d at 603.  In making this distinction, the Fifth Circuit held that an involuntary dismissal with conditions going beyond payment of fees and costs was indeed appealable. *LeCompte*, 528 F.2d at 604.  To this end, the Fifth Circuit held that the trial judge in *LeCompte* impeded the plaintiff's ability to re-file when he conditioned the voluntary dismissal on the following:

> (1) that any subsequent suit must be filed in the same court; (2) that plaintiff must show extraordinary circumstances to justify reopening the case; and (3) that plaintiff must make an affirmative demonstration to the court's satisfaction that a valid cause of action can be maintained against defendants.

*LeCompte*, 528 F.2d at 602.  The Fifth Circuit determined that legal prejudice was definitely present.

> Here the plaintiff is severely circumscribed in his freedom to bring a later suit...[a]lthough plaintiff is not totally precluded from bringing a second suit, he must, nevertheless, prove his case preliminarily to the district court before being allowed the right to relitigate. This requirement, unlike those normally imposed with a Rule 41(a)(2) dismissal, involves prejudice in a legal sense. It becomes uncertain, as a matter of future court decision, whether he will be

10

allowed to bring the second suit. We view this 'legal prejudice' which goes to the heart of plaintiff's legal cause of action as entitling plaintiff to appeal the conditional dismissal of his action.

*Id.* at 604.

¶18.    Ultimately, it was the addition of the legal conditions to the dismissal which caused the dismissal to move from being exactly that which the plaintiff sought to being an adverse judgment capable of being appealed.  In this way, the court found that "[a]lthough it is certainly true that plaintiff prompted the issuance of the order of dismissal by the district court, under the circumstances of this case, he cannot be deemed to have acquiesced in or accepted the terms of the order actually entered." *LeCompte*, 528 F.2d at 604.   In determining whether the suit was appealable, the Fifth Circuit posited that the fact that the plaintiff never sought to have the dismissal set aside was not dispositive. *Id*.  What was dispositive was the fact that he never acquiesced in or accepted the terms of the dismissal. *Id*.

¶19.    The important consideration in determining whether an issue is appealable is that there has been an adverse final judgment rendered against the appealing party.  Accordingly, the ultimate holding in *LeCompte* follows this basic proposition.  In *LeCompte*, the plaintiff readily accepted the dismissal of his case, but never acquiesced in the trial court's additional conditions to his relitigating his suit.  Thus, the trial court entered a judgment to which the plaintiff had not agreed, and that in fact was adverse to his case.

¶20.    In today's case, BellSouth moved for dismissal with prejudice based on the fact that neither lawsuit could be refiled or relitigated.  On this point, the parties filed two separate,

11

adverse motions.  On February 7, 2003, BellSouth filed a motion with the circuit court to voluntarily dismiss its actions with prejudice.  In response, Hinds County filed a motion asking the circuit court to not only dismiss the appeals without prejudice, but to also award Hinds County litigation expenses and attorney's fees.  While Hinds County found it important to include the "without prejudice" language, citing that "dismissal with prejudice impacts only Hinds County, preventing Hinds County from enforcing the laws regulating ad valorem taxation," BellSouth viewed the language as meaningless because it could not refile anyway.  In ruling on the issue, the circuit court quite simply, and almost to the letter, granted defendant's [Hinds County's] motion and dismissed the case without prejudice.  Accordingly, while BellSouth acquiesced in the dismissal, what it acquiesced in was what it had requested – final adjudication subject to appeal.  If we were to now say that the issue is not unappealable, we would saying to  the circuit court that it can grant a defendant's motion and deny a plaintiff's ability to appeal the adverse order of the court.  In essence, it would be to endorse a trial court's ability to condition the appealability of its own orders.

¶21.  In *LeCompte*, the Fifth Circuit acknowledged that a case may be dismissed without prejudice but still have the same effect of a dismissal with prejudice as far as finality for appeal purposes.  *LeCompte*, 528 F.2d at 603.  Accordingly, the Fifth Circuit recognized that these cases are properly appealable under general principles of law. *Id.*

> Although the district court's order in this case is labeled a 'dismissal without prejudice,' at least with respect to determining appealability, we do not believe the order had that effect. As recently noted in Carr v. Grace, 516 F.2d 502, 503 n. 1 (5th Cir. 1975), '(t)he appealability of an order depends on its effect rather than its language.'

528 F.2d at 603.

¶22. Clearly, in the case sub judice, the grant of dismissal without prejudice and assessment of over $100,000.00 in attorney's fees in favor of Hinds County was contrary to what BellSouth had requested or acquiesced in. It follows that the determination made by the circuit court judge served as an adverse final judgment as it was against the interest of BellSouth who had expressly requested the circuit court for a dismissal with prejudice and voluntarily submitted to the preclusive effect of final adjudication. Moreover, final adjudication was the inevitable "effect" of the dismissal irregardless of nomenclature.

¶23. The circuit court's final order served as a dismissal with prejudice for appeal purposes. The Fifth Circuit recognizes that a "[d]ismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties," and that "an adjudication in favor of the defendants, by court or jury, can rise no higher than this." *Schwarz v. Folloder*, 767 F.2d 125, 129 (5th Cir. 1985) (citing *Smoot v. Fox*, 340 F.2d 301, 303 (6th Cir. 1964); *see also Sheridan v. Fox*, 531 F. Supp. 151, 155 (E.D.Pa.1982). Interestingly, some courts, applying this reasoning, have held that a dismissal with prejudice is not discretionary, but instead must be granted if requested by the plaintiff. *Schwarz*, 767 F.2d at 129. It stands to follow in today's case that when a plaintiff wants to blow the whistle on its own case, at its own initiative, and permanently conclude litigation, the court should not stand in its way but encourage it to do so.

¶24. What BellSouth sought in these cases was a final order with preclusive effect. When the circuit court granted Hinds County's motion, the final order contained language which,

13

if interpreted as Hinds County suggests, would deny BellSouth its opportunity to seek appellate review of a final adverse order, and would ultimately preclude BellSouth from both relitigating its claim and appealing it. In essence, it would condition BellSouth's right not to relitigate on losing its right to appeal. Hinds County's argument that BellSouth is not entitled to an appeal in this matter is wholly without merit.

**II. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING HINDS COUNTY'S MOTION FOR COURT EXPENSES AND ATTORNEY'S FEES.**

¶25. The thrust of BellSouth's argument is based on the "American Rule,"which specifies that parties to litigation should pay their own attorney's fees. Thus, BellSouth cites to language from the comment to Miss. R. Civ. P. 54 and asserts that this Court has adopted Rule 54 as a general guideline for awarding attorney's fees. In reconciling the language of Rule 54 with Miss. R. Civ. P. 41(a)(2), BellSouth asserts that while Miss. R. Civ. P. 41(a)(2) allows an award of attorney's fees under certain circumstances, the rule is interpreted so as to work in conjunction with Rule 54. To this end, BellSouth argues that a defendant asking for an award of attorney's fees under Rule 41(a)(2) must demonstrate unfairness and plain legal prejudice, failing which the defendant must bear his own expense.

¶26. While BellSouth's interpretation of Miss. R. Civ. P. 54 accurately appraises the rule as a rule of general application, BellSouth misapprehends the fact that this is not a case of general application. This is a case governed directly by Miss. R. Civ. P 41(a)(2), which states in relevant part:

> Except as provided in Paragraph (a)(1) of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such

14

terms and conditions as the court deems proper ... Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

Miss. R. Civ. P. 41(a)(2). In clear terms, the language of the rule is designed to give a judge, on hearing a motion for voluntary dismissal, the authority to not just dismiss a case, but to dismiss a case in way which insures protection for the unwitting litigant. The comment to Rule 41(a)(2) expounds on this premise:

> The terms of conditions that may be imposed upon the granting of a motion for voluntary dismissal are for the protection of the defendant, although if one of several plaintiffs moves for dismissal conditions may be imposed for the protection of the remaining plaintiffs. The court may dismiss without conditions if they have not been shown to be necessary but should at the least require that the plaintiff pay the costs of litigation. *In imposing conditions the court is not limited to taxable costs, but may require the plaintiff to compensate for all the expenses to which his adversary has been put; the court may require plaintiff to pay the defendant's attorney's fees as well as other costs and disbursements.*

Miss. R. Civ. P. 41 cmt. (emphasis added).

¶27. In *Hughes Equipment Co. v. Fife*, 482 So. 2d 1144 (Miss. 1986), a case cited by BellSouth, we delineated the proper boundary for the broad application and general construction found in Miss. R. Civ. P. 54. Echoing Professors Wright and Miller we stated:

> Absent a special statute or rule, or an exceptional exercise of judicial discretion, such items as attorney's fees, travel expenditures, and investigatory expenses will not qualify either as statutory fees or reimbursable costs. These expenses must be borne by the litigants. 10 Wright & Miller, s*upra* § 2666. *See also 6 Moore's Federal Practice §§ 54.01-.43 (1972).*

482 So. 2d at 1146 (emphasis added). Enter Rule 41(a)(2), which expressly authorizes the trial court judge to assign fees as justice requires. Importantly, when commenting on Rule

15

41(a)(2), Professors Wright and Miller readily embrace the discretionary capacity of the trial court to award fees upon voluntary dismissal:

> The more common practice ...is for the plaintiff to simply move for dismissal without mentioning conditions. The trial court then will specify on what conditions it will allow dismissal. If the conditions are too onerous, the plaintiff need not accept the dismissal on those terms...In imposing conditions the trial court is not limited to ordering the payment of taxable costs, but may require the plaintiff to compensate for all of the expense to which the defendant has been put.

9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 2366 at 303, 304 (1994).

¶28.    In its interpretation of Rule 41, BellSouth has misapprehended both Mississippi procedural and case law and has in essence confused the legal mandate which governs a grant of dismissal with the mandate which governs a court's ability to attach litigation expense and attorney's fees upon a grant of dismissal. Accordingly, BellSouth maintains that while voluntary dismissal was properly granted by the court, the assessment of attorney's fees was improper because voluntary dismissal was neither unfair nor prejudicial to the defendant. In *Carter v. Clegg*, 557 So. 2d 1187 (Miss. 1990), this Court examined both the purpose of the rule and the discretion conferred on the ruling trial court in assigning conditions:

> [T]he primary purpose of Rule 41(a)(2) is to prevent voluntary dismissal which unfairly affects the other side and to permit the imposition of curative conditions...dismissals generally should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of another lawsuit. Moreover, dismissals should be allowed even when resulting in some tactical advantage for the plaintiff. *Accord Phillips v. Illinois Central Gulf RR*, 874 F.2d 984, 986 (5th Cir. 1989); *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 604 (5th Cir. 1976).

16

*Carter*, 557 So. 2d at 1190. Importantly, in *Carter* we discerned the standard for preventing the voluntary dismissal of an action and iterated that if voluntary dismissal would result in prejudice to the defendant, then in order to assure fairness and protection the case would not be dismissed under Rule 41(a). *Id.* This standard has nothing to do with the trial court's discretionary capacity to assess court costs and attorneys fees as a condition of dismissal. Moreover, while the trial court must verify the fee award is reasonable, it is free to assign curative conditions.

¶29.    Here, the circuit court judge properly assessed attorney's fees as a curative condition to the plaintiff's motion to dismiss under Miss. R. Civ. P. 41(a)(2). The circuit court judge clearly found that the length of the litigation and the amount of documents produced, examined and reviewed more than warranted the imposition of a curative condition. The issue of prejudice to the defendant never arose in this case as both parties acquiesced to the voluntary dismissal. Accordingly, the dual considerations undertaken by a trial court judge when considering voluntary dismissal was thus made singular and the sole consideration facing the circuit court was whether to award attorney's fees or to have the parties bear the burden of their own expenses. In making this ultimate determination, the circuit court judge cited the reasons listed above and, well within the boundaries of this Court's precedent, found that "pursuant to Mississippi Rule of Civil Procedure 41, Hinds County is entitled to attorneys fees and expenses." For these reasons, we find BellSouth's argument that an award of attorney's fees was inappropriately granted is without merit.

III.    **WHETHER THE CIRCUIT COURT MADE SUFFICIENT FINDINGS CONCERNING THE REASONABLENESS OF THE**

17

## AWARD OF ATTORNEY'S FEES GRANTED IN FAVOR OF HINDS COUNTY.

¶30. BellSouth argues that the circuit court's findings of fact did not support the attorney's fees award it granted. Miss. R. Civ. P. 41 allows the trial court to grant voluntary dismissals and to condition the dismissals upon terms and conditions that it deems proper. *Carter*, 557 So. 2d at 1192. Moreover, it is well within the trial court judge's discretion under Rule 41(a)(2) to assess attorney's fees as a curative condition. However, while the trial court has considerable discretion in determining whether to assess fees, and if so, in what amount, this discretion must be predicated on facts. Furthermore, precedent requires that the assessment of attorney's fees be reasonable.

¶31. The reasonableness of attorney's fees is governed by Rule 1.5(a) of the Mississippi Rules of Professional Conduct and these guidelines are unambiguous. Rule 1.5(a) clearly requires that:

> A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

Miss. Rules of Professional Conduct 1.5(a). These factors are also known as the *McKee* factors as they were laid out for the first time by this Court in *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982).

¶32. Recently, in *Mabus v. Mabus*, 2005 WL 246747 (Miss. 2005),we stated that "the reasonableness of attorney's fees are controlled by the applicable Mississippi Rule of Professional Conduct 1.5 factors and the *McKee* factors." *Id.* at 3. In *Mabus*, the chancellor actively pursued and confirmed both the reasonableness of and necessity for the amount of attorney's fees submitted by the prevailing attorneys in the case. *Id.* at 3-4. In this way, the chancellor applied Rule 1.5(a) and used the *McKee* factors as his rudder while determining the reasonableness of each attorney's fee submission.

¶33. In *Carter*, we determined that while the chancellor's decision to award attorney's fees was well supported and within the sound discretion of the trial court, the reasonableness of the amount of the attorney's fees was never substantiated. Moreover, we reasoned that,

> Since there was *no evidence regarding any of the above* [*McKee*] *factors*, then the trial court should not have conditioned the nonsuit on an estimate. Although a judge may take judicial notice as a means of establishing one or more of the components of a claim for attorney's fees, it would not be appropriate for him to take judicial notice of every factor without hearing some evidence, unless the fee is a basic fee that is usual and customary within the trial court's jurisdiction.

*Carter*, 557 So. 2d at 1193 (emphasis added).

¶34. This Court has stated the importance of issuing a complete rule 1.5(a) analysis and gave reference to what it expects by way of credible evidence. "The *McKee* factors should have been applied by the trial judge in determining the amount of attorneys' fees to be awarded, and any award should be supported with factual determinations." *Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 487 (Miss. 2002) (citing *Browder v. Williams*, 765 So.2d 1281, 1288 (Miss. 2000)). This Court ultimately vacated the fee award granted in

19

***Miss. Power & Light*** and remanded the matter back to the trial court stating, "[t]he trial judge should reconsider this issue in light of the ***McKee*** factors and support a new award...based on *findings of fact and conclusions of law*." ***Id.*** (emphasis added).

¶35.    In the case of ***In Re Estate of Gillies***, 830 So. 2d 640 (Miss. 2002), we stressed the importance of making a reasonable fee determination. ***Id.*** at 645.   In citing to both Mississippi, as well as federal precedent, we stated "what is controlling is what is reasonable." ***Mauck v. Columbus Hotel***, 741 So. 2d 259, 271 (Miss. 1999). This Court further noted that the factors set forth in Rule 1.5 are almost identical to the "lodestar" factors established by the United States Supreme Court. ***Id.*** at 272.   We went on to specifically cite United States Supreme Court precedent as follows:

> The United States Supreme Court adopted the "lodestar" method of calculating reasonable attorney fees. In calculating the "lodestar" fee, [t]he **most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate.** This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services....

*In re Estate of Gillies*, 830 So. 2d at 645 (citing ***Mauck***, 741 So. 2d at 271) (quoting

***Hensley v. Eckerhart***, 461 U.S. 424, 433, 103 S.Ct 1933, 76 L.Ed.2d 40 (1983)) (emphasis added).  We also stated:

> [T]he chancellor determined a reasonable fee, based on the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate. He also considered the eight factors enumerated in Rule 1.5, as is required by *Mauck*. In doing so, he followed the proper procedure that this Court has established for determining reasonable attorney's fees. Thus, he did not abuse his discretion, and this assignment of error is without merit.

*In re Estate of Gillies*, 830 So. 2d at 646.

¶36. In today's case, the circuit court judge not only failed to make any substantive findings of fact, he made a blanket endorsement of Hinds County's attorney's fee submission without making any kind of reasonableness determination. In issuing the final orders, the circuit court made minimal findings. Paragraphs one, two and five found in both orders provide as follows:

> 1. The herein action was filed on or about August 30, 2000 for ad valorem tax relief in the amount of Four Hundred Four Thousand and Five Dollars ($404,005.00). The parties have conducted a substantial amount of discovery in this matter.
> 2. On or about February 7, 2003, the plaintiff filed a motion to dismiss the herein case with prejudice pursuant to Rule 41(a)(2) of the Mississippi Rules of Civil Procedure. The court notes that the litigation herein was vigorously pursued by the plaintiff for approximately three years.
> 5. The plaintiff seeks to dismiss the herein lawsuit almost three years after it was filed. Defendants hired counsel to vigorously defend said lawsuit. Depositions were taken and MCTA [BellSouth] produced thousands of documents during discovery. Hinds County had to review many thousands of documents in connection with this matter.

Notably, the above findings, which were issued for both appeals, were inaccurate as to the 2002 appeal, wherein the tax controversy involved only $137,170.85 in total and was pending in court for less than three months. To this end, the 2002 appeal involved no discovery and hence no documents were produced or reviewed by Hinds County.

¶37. The circuit court entered identical orders in two cases which had different factual backgrounds. From the record before us, it is apparent that the circuit judge did not consider the reasonableness of Hinds County's attorney's fee submission and seemed convinced by the simple rationale that a suit in court for three years involving thousands of pages of discovery must be worth over $100,000.00 in legal fees. While this rationale might prove

21

to be correct, the trial court's actions in arriving at the amount of attorney's fees and expenses are not consistent with our decision in *McKee*, and the United States Supreme Court's decision in *Hensley*. Also, in *Browder*, we expressly stated that "[t]he reasonableness of an attorney's fee award is determined by reference to the factors set forth in Rule 1.5 of the Mississippi Rules of Professional Conduct." 765 So. 2d at 1288. Similarly, in the case at bar, the trial judge "should have applied these factors in determining the amount of attorney's fees to be awarded and supported that award with factual determinations." *Id.* To hold otherwise, would be to obligate this Court to make an original reasonableness determination and, in so doing, deprive us of our proper judicial function as a reviewing appellate body.

¶38.    When a trial court makes such attorney's fees awards, it should do so with caution and clarity. While Miss. R. Civ. P. 41(a)(2) expressly confers upon the trial courts the discretion to assess attorney's fees, this discretion should be appropriately exercised with findings of fact and conclusions of law to undergird both the award and the amount of the attorney's fees and related expenses.

¶39.    We have accordingly expressly enumerated the standard by which such a reasonableness determination be made and have mandated that a trial court consider the eight factors enumerated in Rule 1.5 of the Rules of Professional Conduct. While the trial judge has the discretionary prerogative to make such a determination, and this Court affords substantial deference to such discretion, a judge's discretion is not unfettered. Moreover, trial court judges must follow the appropriate procedure and make the requisite findings of

fact necessary to insure a losing litigant is only made to compensate his adversary for fees and expenses which were reasonably incurred. Based on the record before us, we are thus constrained, as a matter of law, to find that the trial court in today's case abused his discretion in failing to undergird his attorney's fees award with specific findings consistent with MRPC 1.5 and *McKee*.

## CONCLUSION

¶40. The orders from which BellSouth appealed were final for appeal purposes. Also while we find that the trial court did not abuse its discretion in assessing attorney's fees and expenses as a condition to a Miss. R. Civ. P. 41(a)(2) dismissal, the trial court did abuse its discretion in failing to consider the MRPC 1.5 factors as discussed in *McKee* and its progeny. We thus vacate the trial court's orders assessing attorney's fees and remand these cases to the Circuit Court of the First Judicial District of Hinds County to reconsider consistent with this opinion the issue of the amount of attorney's fees and make appropriate findings of fact and conclusion of law to support any such award.

¶41. **VACATED AND REMANDED.**

**SMITH, C.J., COBB, P.J., GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WALLER, P.J., AND DIAZ, J., NOT PARTICIPATING.**

23